860

**CONNELL et al. v. VERMILYA–BROWN CO., Inc. et al**

District Court, S. D. New York.

Oct. 19, 1946.

Jacob Bromberg, of New York City (Sol L. Firstenberg, of New York City, of counsel), for plaintiffs.

Eidlitz, French, Fink and Markle, of New York City (James Randall Creel, of New York City, of counsel), for defendants.

COXE, District Judge.

This is a motion by the defendants for summary judgment in their favor.

The action is brought by eleven former employees of the defendants for additional overtime compensation, liquidated damages, and an attorney's fee, under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

The defendants were jointly engaged in the construction of an Outlying Defense Base, known as Fort Bell and Kindley Field, in the Bermuda Islands, under a cost-plus-a-fixed fee contract entered into with the United States (by Lt. Col. J. D. Arthur, Corps of Engineers, United States Army), dated February 4, 1941. This construction work was being performed exclusively in areas leased to the United States for ninety-nine years pursuant to an executive agreement between the United States and British governments, dated March 27, 1941, providing for the leasing to the United States of various areas, including areas in the Bermuda Islands, for the establishment of naval and air bases. See 55 Stat. Part 2, pp. 1560–1591.

The plaintiffs were employed by the defendants at different times during the period from September 1941 to the middle of 1943 in connection with the construction of this Defense Base, and all of the work for which the plaintiffs are now asking overtime compensation was performed in Bermuda and directly concerned with such construction. Seven of the plaintiffs were employed as patrolmen and acted as policemen in the leased areas; the other four plaintiffs were employed as fire patrolmen and acted as firemen in the same areas. During the course of their employment, one of the plaintiffs, who had been employed as a patrolman, was promoted to be a "sergeant of police", and another of the plaintiffs, who had been employed as a fire pa-

trolman, was promoted to be a "lieutenant" of the fire department.

The defendants make three contentions in support of the motion, namely, (1) that the Fair Labor Standards Act has no application to the employment of the plaintiffs in the leased areas of Bermuda, (2) that the plaintiffs were engaged in work of original construction, and were, therefore, not covered by the Act, and (3) that two of the plaintiffs are exempt from the provisions of the Act as executive and administrative employees.

■ The Fair Labor Standards Act has no application to the employment of the plaintiffs in the leased areas of Bermuda. This Act, in Sections 206 and 207, provides for minimum wages and maximum hours for employees "engaged in commerce or in the production of goods for commerce" 29 U.S.C.A. §§ 206(a) and 207(a). Section 203(b) defines "commerce" as meaning "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof", and Section 203(c) defines State as meaning "any State of the United States or the District of Columbia or any Territory or possession of the United States" 29 U.S.C.A. § 203(b) and (c).

■ None of the leased areas of Bermuda in which the construction work of the defendants was being performed was a "Territory or possession of the United States" within the meaning of the language of the Fair Labor Standards Act. The plaintiffs make no contention that any of these leased areas is a "Territory" of the United States, but they insist that such areas are possessions of the United States. Whether they are possessions of the United States depends on whether they are within the sovereign jurisdiction of the United States. That is a political question to be determined by the legislative and executive departments of the government, and not by the courts. Jones v. United States, 137 U.S. 202, 212, 11 S.Ct. 80, 34 L.Ed. 691; Pearcy v. Strenahan, 205 U.S. 257, 265, 27 S.Ct. 545, 51 L.Ed. 793.

The legislative and executive departments of the government have clearly indicated that these leased areas are not within the sovereign jurisdiction of the United States. In 1940, while the negotiations for the leased areas were in progress, Attorney General Jackson rendered a formal opinion to the President regarding the proposed executive agreement with Great Britain, in which he stated as follows: "The privilege of maintaining such bases is subject only to limitations necessary to reconcile United States' use with the sovereignty retained by Great Britain. Our Government assumes no responsibility for civil administration of any territory. * * *" 39 Op.Atty.Gen., 484, 485.

Moreover, the State Department, in a letter to the attorneys for the defendants, dated June 20, 1946, has advised that "this Government has not made any claim that the bases in Bermuda are territories or possessions of the United States". And in a recent Statute, Act of March 22, 1943, 57 Stat. 41, 34 U.S.C.A. § 1201, the Congress has indicated that it regarded leased areas as without the territorial jurisdiction of the United States. This statute extended the jurisdiction of naval courts martial to civilian employees and others at naval bases and air stations "within an area leased by the United States which is without the territorial jurisdiction thereof."

The only case cited by counsel in which the precise question now raised was adjudicated is Eckert v. Elmhurst Contr. Co., decided by the New York City Court, July 10, 1945, 185 Misc. 108, 56 N.Y.S.2d 98, and affirmed without opinion by the Supreme Court Appellate Term, 186 Misc. 100, 61 N.Y.S.2d 730. This was a suit brought under the Fair Labor Standards Act by an employee at a naval and air base in British Guiana in one of the areas leased to the United States under the same executive agreement involved in the present case. The court held on an analysis of the executive agreement that the leased area was a temporary possession of the United States, and that therefore the plaintiff was within the coverage of the Fair Labor Standards Act. I think that this ruling is contrary to well established law because it assumes to decide the political question of sovereignty, which is not for the courts to determine.

With this determination, it is unnecessary to pass on the other contentions of the defendants.

The motion of the defendants for summary judgment dismissing the complaint is granted.